# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| GEMALTO S.A., § | |
| § | |
| Plaintiff, § | |
| v. § | Civil Action No. 6:10-CV-561-LED |
| § | |
| HTC CORPORATION, HTC AMERICA, § | JURY TRIAL DEMANDED |
| INC., EXEDEA, INC., SAMSUNG § | |
| ELECTRONICS CO., LTD., SAMSUNG § | |
| TELECOMMUNICATIONS AMERICA § | |
| LLC, MOTOROLA MOBILITY, INC., and § | |
| GOOGLE INC., § | |
| § | |
| Defendants. § | |

**PLAINTIFF GEMALTO S.A.'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

## NOTE ON CITATIONS

- References to the patents-in-suit are indicated by column and line number, or by figure number. Unless stated otherwise, all references are to the specification of the '317 patent. A reference to "3:15-17" therefore means column 3, line 15 through line 17 of the U.S. Patent No. 6,308,317.

In response to the Court's preliminary, non-binding proposal for "a set of resource constraints" as "insufficient amount of memory to run the compiled application source program in an unminimized form," Gemalto explained at the Markman hearing that this construction does not capture the substantial efficiencies expressly taught in the patents that are gained in the use of a device's computing resources through Gemalto's novel conversion technology. These efficiencies result from the reduction in size of compiled applications once converted, the reduction in size of the virtual machine (i.e., the interpreter) and the faster processor execution speed of the converted applications. (D.I. 191, at 5; Markman slides at 4, 36-38.) The practical effect is that a resource-constrained device that employs Gemalto's conversion technology will require significantly less memory and processing power or speed for the storage and execution of the converted applications and the virtual machine.

As the patents explain, the typical computing platform running Java in an unconverted form is the microprocessor-based desktop computer (1:55-59), which has access to large amounts of memory and a faster processor (1:66-2:2). As one of ordinary skill (and even lay persons) would recognize, such computing resources in a desktop computer are normally expandable, meaning more memory (such as adding more RAM for application execution or a larger hard drive for storage) and a faster processor can easily be added as needed. On the other hand, the microcontroller-based embedded systems described in the patents are portable devices designed for a particular purpose (i.e., such as a mobile phone) that have a fixed amount of memory and/or processing resources as a consequence of the physical limitations imposed by their smaller form factor.[1] The portable devices described include an integrated circuit card (having a processor which, in one embodiment, "may be a microcontroller," (4:12-14)), referred

---

[1] "In a microcontroller, the amount of each kind of memory available is ***constrained by the amount of space on the integrated circuit*** used for each kind of memory." (2:14-16.)

McKool 445698v1

to as a "portable device" of "small size" (2:49-52), a mobile telephone (Fig. 22), a ring (Fig. 24), and an integrated circuit card specifically for automobile control systems (Fig. 25, 19:22-30). These devices are all portable devices for an embedded or specific purpose or set of purposes given their smaller size as compared to desktop computers. In contrast, a desktop computer is a general purpose device designed for table or desktop use. Thus, portable devices (because they are of smaller size) have access to substantially less memory when compared to typical desktop computers and the amount of memory for program execution is fixed, meaning that there is typically no ability for expansion. These devices also use substantially slower processors when compared to the typical desktop computer. The conversion process thus allows applications and interpreters to make more efficient use of these fixed computing resources. This ensures applications will be suitable to run (not just able to run as the Court proposed) on the device. Thus, Gemalto proposes the construction of "a set of resource constraints" to be "a fixed amount of memory and/or processing resources on the device."

In view of the patent specification (1:55-61 and 2:5-16) and the extrinsic evidence[2] that teaches resource-constrained devices relative to the computing resources of typical desktop computers, Gemalto alternatively proposes that the Court also consider a modified version of Gemalto's original construction: "computing resources that are limited as compared to typical desktop computers" Defendants' reliance on *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359 (Fed. Cir. 2005), is misplaced. In that case, the Federal Circuit found that by using the limitations "normally," "conventionally," "traditionally," and "standard," the patentee **_deliberately_** chose to include in the claim a "**_time dependent_**" limitation. *Id.* at 1363. Unlike in *PC Connector*, however, none of the claims that contain the "resource constraints" limitation

---

[2] *See, e.g.,* D.I. 191 at 6-7 and Ex. 2 at 3:1-8 ("*Resource-constrained devices are generally considered to be those that are relatively restricted in memory and/or computing power or speed,* as compared to typical **desktop computers**").

- 2 -

recites any such "time-dependence" limitation—and the definition of what a desktop computer has not changed over time (a general purpose device for table or desktop use). As such, it is inappropriate to limit its scope to devices that were considered "constrained" as of the time of the invention relative to the computing resources of then-existing desktop computers.

Indeed, courts regularly construe terms—*e.g.*, "smart phone" or "computer"—whose meaning could be said to "evolve" as technology advances, and patentees regularly use such terms to define the metes and bounds of their inventions without running afoul of 35 U.S.C. § 112.[3] As explained by Neeraj Gupta, the state of the art in computing resources has continued to expand according to Moore's Law (D.I. 191, Ex. 1, at ¶ 15.) Indeed, the comparison of desktop computing platforms to determine "resource constraints" is fixed because—as taught in the patent—a person of skill in the art would necessarily compare an accused device to the "typical" desktop computer, i.e., a desktop of the same state of the art. (*Id*. at ¶ 14.) In other words, as the extrinsic evidence cited by Gemalto (*see* D.I. 191 at 6-7) and Google's own description of its products[4] demonstrates, a person of ordinary skill in the art would have no trouble identifying whether a device operates with "resource constraints" relative to a "typical" desktop computer, i.e., a desktop computer of the same period.

---

[3] *E.g.*, *Visto Corp. v. Good Tech., Inc.*, No. 06-cv-039, 2008 U.S. Dist. LEXIS 3244, at *25 (E.D. Tex. May 6, 2005) (construing "smart phone"); *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (construing "computer"); *ACQIS LLC v. Appro Int'l, Inc.*, No. 09-cv-148, 2010 U.S. Dist. LEXIS 77548, at *23 (E.D. Tex. Aug. 2, 2010) (construing "power supply circuitry having a stored energy capacity *no greater than the energy required to power said CPU, memory and mass storage for 30 minutes of operation* at the maximum rated speed of the CPU") (emphasis added).

[4] Android devices are "mobile devices that are more limited in terms of computing and memory resources than ***desktop computers***." (Gemalto Markman slides at 48 (Google Answer to Oracle Complaint).)

McKool 445698v1

Dated: May 15, 2012             Respectfully submitted,

                                */s/ Sam Baxter*
                                Sam Baxter
                                Texas State Bar No. 01938000
                                sbaxter@mckoolsmith.com
                                MCKOOL SMITH, P.C.
                                104 East Houston, Suite 300
                                Marshall, Texas 75670
                                Telephone: (903) 923-9000
                                Facsimile: (903) 923-9099

Robert A. Cote                  Peter J. Ayers
rcote@mckoolsmith.com           payers@mckoolsmith.com
John F. Petrsoric               Pierre Hubert
jpetrsoric@mcoolsmith.com       phubert@mckoolsmith.com
Radu A. Lelutiu                 Laurie L. Fitzgerald
rlelutiu@mckoolsmith.com        lfitzgerald@mckoolsmith.com
Shahar Harel                    Geoffrey L. Smith
sharel@mckoolsmith.com          gsmith@mckoolsmith.com
Allison Speigel                 Todd Bellaire
aspeigel@mckoolsmith.com        tbellaire@mckoolsmith.com
MCKOOL SMITH, P.C.              Christopher J. Mierzejewski
One Bryant Park, 47th Floor     cmierzejewski@mckoolsmith.com
New York, New York 10036        MCKOOL SMITH, P.C.
Telephone: (212) 402-9400       300 W. 6th St., Ste. 1700
Facsimile: (212) 402-9444       Austin, Texas 78701
                                Telephone: (512) 692-8700
                                Facsimile: (512) 692-8744

                                **ATTORNEYS FOR PLAINTIFF GEMALTO S.A.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic services on this the 15th Day of May, 2012. Local Rule CV-5(a)(3)(A).

                                /s/ Shahar Harel
                                Shahar Harel